Good morning, Your Honor, and may it please the Court. My name is Edward Wenger and I represent Mr. Shantu Shah, the plaintiff appellant in this matter. At this time, I would like to reserve five minutes for rebuttal. Okay. The District Court erred twice on its way to granting judgment in favor of Mr. Shah's former employer, Meier Enterprises, and both errors should result in reversal. The first mistake it made was allowing this case to proceed in federal court at all. The second was taking the resolution of contested factual issues away from the jury. I'd like to begin with the remand issue. I believe that the parties in the District Court all agree on a critical question, which is whether Mr. Shah's November 23, 2016 mailing to Meier Enterprises was adequate for service under the Oregon rules of civil procedure. If it was, then Meier's attempt to remove the case was untimely. If it wasn't, then Meier's notice of removal was timely. What's your best authority that service of process without a return receipt constitutes proper service under Oregon law? That being said, should we certify this question to the Oregon District Court? I don't think there's any authority on that either. No, Your Honor. We haven't found any authority suggesting, to begin with your last question, working backwards, that whether or not this is actually raising a jurisdictional issue, although it very well may under Oregon law. To answer your second question, if the court is unsure what the test of the court has to apply, certification would be necessary or even appropriate under the circumstances. The reason why is because the rule in the federal courts say that if there's any doubts that removal was appropriate, then the remand should be the default relief. Now, to answer the first question you asked, Judge Callahan, we don't have a case that's going to be appropriate, but what we do have here is the fact that the cases that are cited, not only by the District Court and the Magistrate Judge, but also by Meier in this case, don't actually deal with the situation that we have here. That is, not only did Mr. Shaw make his service via certified mail, but also via restricted delivery and left out the return request. So we're dealing with a situation that is undetermined and is a bit unusual when it comes to the Oregon laws. And as an initial matter, we would suggest that this bit of ambiguity Mr. Harris, I'm wondering if we really even need to decide that question because isn't it true that the delivery was to front desk reception? That is true, Judge Fitzwater, but I don't think that that makes a difference when it comes to the actual adequacy of service, because the test itself... If you look at Rule 7D2 and D3, first of all, for a corporation, the primary service method is personal service or office service. And then there's an alternative basis that takes you back to 7D2D. But just simply leaving it at reception for the front desk doesn't appear to be sufficient regardless or preferred. And I'm just wondering if we really don't need to address this certified issue in light of the facts of this case. Well, in the facts of this case, Your Honor, I believe that the rule that we're relying on is Oregon Rule of Civil Procedure 7D1, and that is truly a catch-all. It asks whether service was in any manner reasonably calculated under all the circumstances to apprise the defendants of the existence and pendency of the action and to afford a reasonable opportunity to appear and defend. In this case, we are talking about a smallish, not a... I mean, it's got several different offices, but Meyer was actually put on notice. And I know that this actual notice does not constitute adequate service under Oregon law. I know that that's sort of a strange quirk of Oregon law. But the question is, Mr. Shaw, who was appearing pro se at the time and did his level best to make sure that the defendants who were in this case were made aware of the pendency, under this catch-all provision, the question is whether what he did was reasonable to put Meyer on notice that he was bringing this case against them. And we would submit that the question of certified mail, which we put into our briefs, actually functions in the same way as a return receipt requested in that when you send a letter via certified mail, at least in the year 2021, you get a confirmation of receipt via email later on that was accompanied also by restricted delivery that guaranteed, through the U.S. Postal Service, that that letter was going to end up at Meyer Enterprises. When you're talking about the primary service method, the rule is talking about service on a registered agent, officer, or director. And then you get into this alternative of mail if you can't find that kind of person within the county. And I'm just saying factually in this case, we actually know the delivery was just to the front desk at reception. It seems to me the rule of procedure is teaching us something. That is, that merely leaving it with someone at the front desk at reception doesn't have the same guarantee of trustworthiness or reliability as when you're looking at actual, you know, someone like an agent, officer, or director, who is not being maybe responsible enough to get this to someone who isn't playing to the right person. That point is well taken, Judge Fitzwater, but I think that under the circumstances of this case in particular, and that's what we need to focus on for purposes of whether or not this was an appropriate service or process, that Mr. Shaw, who knew where, you know, where Meyer was located as well, did what was reasonable given the circumstances and his knowledge at the time. And it also bears reiterating that Meyer, in fact, was made aware. The right people were made aware under these circumstances. Counselor, may I ask, in any event, we are construing Oregon state law, are we not? We have to do that in order to resolve this case. And I guess I'm not quite comfortable with your response about certification. We spent a lot of time looking at the Oregon cases, and we don't see anything that really resolves this. And for that matter, your reference to 7D1 still requires us to determine what is meant by the word service. So what's wrong with sending this to the Supreme Court of our state? My chambers are here in Oregon to resolve this. If we make a decision on this case, it could very easily impact, even though it might be even in a memorandum disposition, it might impact the procedure in the state of Oregon. I think that the answer, Judge O'Scanlan, is the federal court's principle that any doubts about the right of removal requires resolution in favor of remand. So what's your authority for that? I can pull that up. We put it into our briefs, and I will go ahead and give you the citation for that. During the rebuttal, I don't have it right in front of me. Is it a statute or is it a case? That is a case, Your Honor. Okay. And I think that that's based primarily on the federalism concerns and that the federal courts are concerned about taking too many cases away from the state courts. Federal courts are a limited jurisdiction, and we would submit that that's why that rule is there. So given the fact that there is some uncertainty, some of which Your Honor has recognized, we believe that the appropriate determination, given what we submit as federal court case law, is to remand and allow the state courts, err on the side of remand in these circumstances. We're not talking about a lot of time here, though. Why did your client, why was the second service done? Because the second service, the first service would be 48 days after as opposed to 30, right? And the second service is within the 30 days. So why did your client do the second one? I think at that point, he was doing his best as a gentleman who was proceeding pro se and was communicating with lawyers and trying to basically work his way through the organ in the federal court system. At the time, Meyer's lawyer, who had recognized that the case was being brought against them, submitted an offer of judgment, threatened him with sanctions. And I think that at that point, he was making his arguments to the court while at the same time trying to make sure that he was covering all his bases. I believe that that's probably the best way to describe what he did. And that's, I think, the best that he could do under those circumstances. So basically, he got the message, we're not accepting this as service. So you better do something. You better do better. Well, he got that from the defendants, but he certainly has not gotten that from any court before he ended up in federal court and then decided, you know, that the removal itself was inappropriate. He stuck by and has argued and has been consistent with his argument that the initial service in November 2016 was adequate. And for that reason, the case belonged in Oregon State Court this entire time. Well, we haven't even talked about the merits of the case yet. So if we get to the merits, and you're under five minutes already, do you want to say something on the merits? Yes, Your Honor. And I make this very brief because I think that we've laid this out effectively in our briefs in that the arguments on both sides are really factual arguments. There is a question about whether or not Mr. Shah was treated dissimilarly from a similarly situated younger Caucasian candidate. And that dispute really focuses on the question about whether or not the knowledge of the Washington labor industry standards were a requirement of employment. Well, but your client also had the emails that he points to. I mean, they bring up things that he was not performing satisfactorily, according to the business. But I'm wondering, why do you think that it's the same person that hired him that fired him? So why don't they get the same actor presumption? Well, because his initial hiring wasn't for the job that he had applied for. They gave him a secondary job, one which he thought that he was more qualified for. He accepted that job, but there's a disputed issue of fact about whether or not they passed him up for that initial position, the supervisory position, given the fact that his age and his ethnicity was not preferred next to the candidate who eventually received that job. And he did raise that. He raised the fact that they didn't ask him at all about Washington labor industry experience during his during his interview. It wasn't listed as a requirement. Meyer has countered with, oh, yes, we did. And we would submit to the court that this is precisely the type of credibility determination that should go to the jury and should not be resolved on a motion for summary judgment. So those are the things. And there are other issues of disputed fact. Mr. Shaw did point to the fact that some of these mistakes were actually made by someone else who he raised concerns about. You know, Meyer has also countered and said, well, you know, we're going to go ahead and tell our story. And our position is that that's just something that was wholly inappropriate to resolve on a motion for summary judgment. I see that I've only had two minutes left. I would like to reserve the balance of my time for rebuttal. So if there are no questions. Does anyone on the court have further questions of Mr. Wenger? Okay. So you can reserve the balance of your time. Thank you. All right, we'll go to Meyer Enterprises. Good morning. Good morning. May it please the court, Rebecca Watkins for Meyer Enterprises. As have already been introduced by counsel, there's two issues here. I will start with the removal issue as well. I think there's a difference of opinion here between me and Mr. Shaw's counsel about whether the trial court had to remand if it found there was any doubt. First of all, that the cases that are cited don't support that standard. What they say instead is that when the trial court, a federal court, is looking at what happened before removal, they apply state court cases. And that's what trial court did here. And the trial court made this decision based on some Supreme Court cases from the state of Oregon, along with some intermediate court cases, which talked about the fact that a mailing, which is not one of the prescribed methods outlined in Rule 7D, but it's kind of like as a catch-all, is this enough to be a matter that would reasonably give notice. They said that that type of mailing without return receipt confirming delivery would not be sufficient service. The trial court had the ability to make that decision. It wasn't a decision of doubt, and it isn't the kind of case where, as Mr. Shaw's counsel argues, that if there was any doubt whatsoever, or if there wasn't a Supreme Court case that looked at the exact same That's not supported by the case law. In fact, the case law instead says the federal courts look to the state courts for guidance and make a decision based on what those state court decisions say. As already gone over by this court, this was a mailing that went to an office where Mr. Shaw did not work. He had visited a few times during the course of his little less than two months of necessarily have any information about how that office worked. He mailed it. It got left with the front desk or reception area. Nobody signed for it. We don't know what individual or if an individual actually took it in hand. It was not a manner of service that was similar to those outlined in ORA CP 7D, the form of service that is likely to bring home notice than those customary substitutes that are outlined. The trial court was completely supported in being able to make that decision based on Oregon law. The actual notice comes up over and over in Mr. Shaw's arguments. The Supreme Court has made that very clear for Oregon too. Actual notice is not sufficient. Oregon, even if it's considered arcane, relies on deconduct or the manner used, whether it's reasonably calculated, not whether somebody got it, even though the method used was not an appropriate method. Counsel, would you address our standard of review on this issue, whether it's de novo or some other standard? If it is de novo, do we owe any deference to the court on an issue of removal is de novo or an issue of a trial court's assessment of Oregon or the state law, except for the fact that when the district court is sitting in the state, there is some deference given to the district court's findings in applying the state card. The idea that the state court will have had more experience with that state's state laws. There's a bit of a deference towards the state law that's applied by the district court that sits in that state. I think that used to be true, but I think the Supreme Court, what do we do with the fact findings, if any, of the district court in terms of what was reasonable? Is that entitled to any deference at all? I believe you have de novo review of that under the case law as I read it. Thank you. So basically, the bottom line is if we look at it and we think that the district judge got Oregon law wrong, then we're going to say that it wasn't a timely service. If we look at it and we say, well, we think Oregon law says that that would be adequate, then the removal would not have been timely, correct? But if we look at it and say, okay, that looks right to me. I think that that's not adequate service under what the Oregon law that I'm looking at for purposes of this case, then there's no doubt that the second service is adequate, correct? And that it's in the 30 things. Right, right. And that was discussed a little bit in Mr. Wenger's arguments. And I think the reason why the second service happened is because after this attempted mailing and being told by the attorney for Meyer that the service wasn't proper, at that point in time, what Shaw did was he filed for a motion for default judgment with the trial court in the state court. He didn't try to immediately reserve. Instead, he tried to get a default judgment. And so we also have in this as the federal trial court indicates, we have evidence that the state trial court noted the service wasn't proper and denied the motion for default judgment as well. And only after that point, Mr. Shaw then served the registered agent properly. And the time clock started for removal. And there's no question that removal was otherwise proper in this case based on that January service. But what is the impact in this case? If the second service was valid, therefore, what? The second service was valid while the removal was timely based on that proper service. Therefore, reverse or therefore, therefore, the court was properly had jurisdiction over the case. It stayed with the federal court and then the court had the ability to go ahead and rule on summary judgment motions when they came, which we also think were correctly determined in favor of Meyer defendants. So well, do we have to resolve the question of the first attempted service or can we jump set to quickly to the second? I think that if you look at it based on that service, that was timely removal. What Shaw is arguing is that that first service was proper. And so if that first service were found to be proper, the removal was too far. It was outside the timeline for removal. So that is also, would you respond to the suggestion that some of us have been discussing of letting the Oregon Supreme Court help us decide what is meant by the term service? Certainly, I think that the case law says you have to look at what the state court did because it happened before removal and look at the state court's rulings. If for any reason this court thinks it's not clear enough, I think certification would have to be would be an appropriate option. If the question of these specific facts. Now, I think some of the case law and Anderson and such talk about the federal court has the ability to make a prediction based on what they think the court would do. But is there, are there enough tea leaves out there from the Supreme Court of Oregon that tells us which way to go on that? Well, one of the problems I have is not even Edwards versus Edwards resolves that question. Right. Edwards versus Edwards gives us some indication. We know actual notice isn't required. We do have that from the Supreme Court. We have the Davis Wright Tremaine versus Mencken case that gives us a little bit more information that's kind of relevant to this kind of same search situation, which the trial court can make a decision based on intermediate courts. In fact, I think it says that if, unless there's any reason to think the the Supreme Court wouldn't agree with that intermediate courts, then that could be a kind of controlling case law as well in terms of what the state case courts would decide. But certainly, if you got to this point where you didn't feel like it was clear enough and that prediction couldn't be made, and this is a specific enough difference, then I think you could certify it to the Supreme Court. But it would not be dispositive of the case because even if we certified it and let's say then it comes back, it's still not dispositive of the case. Right. A lot of times when we certify something, it might go to the heart of what the legal issue is and the case is either over or done. Here, if the service was, if they say the service was not adequate, then the removal was appropriate, but then we still haven't resolved the summary judgment. So just talk to me about the summary judgment. All right. You heard that he somehow, he's saying because he didn't get the first job, that's part of the problem. That particular section of, I don't know what you call it, it's something like Washington W&I or I don't know what, that sort of training, the person you hired had it, but he didn't and it isn't listed as a specific requirement. How do you respond to that? Sure. I think the response was put into the different parts of evidence that you have in front of you, including various clients' response to that. The job posting description has kind of a basic, here's the outline of the job. It doesn't include everything. For example, it doesn't say you have to be able to read. Being able to read as the electrical engineer, project manager was something that you'd have to be able to do on the job. In other words, the absence of something on the posting doesn't mean it's not a legitimate requirement for a job. Are you saying it still isn't a requirement or is it a reason to differentiate why someone would be more qualified than another person? To some extent, it's both. They differentiate it between. It's why Mr. Waterman was not similarly situated to Mr. Shaw because Mr. Waterman did have that experience and contacts at the Department of Labor and Industry. My client, Meyer, does a lot of work that requires L&I review of the plans, things like school, district buildings, and things like that that have to go through that Washington L&I review process. That was an important part. They knew their projects required that. They did talk to all the interviewees about that. It wasn't a reason or one of the reasons why Mr. Shaw was not brought in for that higher level job. There were some other reasons, but that was the primary one. They didn't know a Mr. Shaw, whereas they did know of Mr. Waterman and the clients knew of Mr. Waterman. There was also some of that as well. It was primarily because of that difference in the experience with Washington State L&I approval, which is something that if you look through the emails and information about the things that Mr. Shaw struggled with, a lot of those were L&I reviews that got rejected once or twice and had to be redone by other people in some cases. That was an important part of the job. There's a lot of evidence that that was there. When you look at that same actor, the argument that hiring somebody into a position that is still a project management position still has a lot of authority, very high wage, a job that they were willing to, if Mr. Shaw had turned out to be the candidate they believed he was, pay a recruiter fee of $18,500 to hire him through a recruiter. I think that is still the suggestion that somehow that shows discriminatory intent to the fact that he was hired but not into this other job. It's a hard argument to make. If somebody really had some sort of discriminatory intent against somebody because of their race or age, why would they hire them into that high of a position with that much pay, credence, authority over responsibility in the first place? It's very hard to see that as a promotion or the same types of things when they look at the same actor. So was he terminated within a 60-day probationary period? He was in less than 60 days. 60 days was an important marker for this case because that is when the recruiter fee had to be paid. If you kept him longer than 60 days, then it was a placement by that recruiter and that $18,500 fee would have had to be paid. That did play a part in the determination of when to let him go. Was Mr. Shaw advised of poor performance and given any opportunity to improve before his employment was terminated? Yeah, that was brought to his attention in several occasions and emails and such over the different, that's in the record there in terms of things Mr. Anderson bringing up to him. He was aware because there were more than one project where they got the feedback. L&I rejected one project twice and rejected it for the electrical portion in large part, the portion that Mr. Shaw was overseeing. So he was made aware of that. Another part of the performance issues going on at the same time was that when these things were brought up, he would take time off work. He took four days off work without getting approval, not following policy. In fact, one chain of conversation with Mr. Anderson was, oh, we need to work on this project. We got to make this high priority. And the response was, oh, I'm taking two days off. And he wasn't going to be there. So let me, your time's expired. Let me see if my colleagues have any additional questions. Thank you. All right. We'll go back on rebuttal. Thank you, your honor. And I'd like to start, Judge O'Scanlan, I actually did pull that citation for you. The case is Moore Thomas versus Alaska Airlines Incorporated. And the citation is 553 F3 1241. It's a ninth circuit position from 2009 that says the removal statute is strictly construed and any doubt about the right of remand. This was also cited by the magistrate judge in the report and recommendation. I believe it was page 29. Thank you. Yeah. So for that reason, I'm sorry, I didn't have that immediately on my fingertips. But for that reason, we would suggest that if there is a question, and I believe that this is unresolved under Washington or under Oregon law, that remand is appropriate. And we think that that's the And just with my last minute, I would like to put out what my friend on the other side has described as the reasons why Mr. Shaw was not given the position he applied for first and was eventually terminated. These are all factual arguments, and each one of them is disputed. Primarily the issue with the Washington labor and industry standards. Not only were they not in the job description, but also Mr. Shaw has testified that he was never asked about those during his interview. He wasn't asked about those after he was hired. And given the fact that there's a dispute as to how important this knowledge actually was, one would think that if it was important, he would have been asked about it during his interview. That this is a jury question. It's a question of credibility. It's a question about who's telling the truth. And for that whether the reasons that were given were protectual should go to the jury. The same thing with the reasons why his performance was considered substandard. He had put into the record evidence that it was somebody else's fault. And for that reason, summary judgment was inappropriate. And with that, I see that I'm out of time. All right. Unless my colleagues do either my colleagues have additional questions of Mr. Wenger. No, thank you. Thank you both for your argument. This matter will stand submitted. Thank you, Your Honor.
judges: O'scannlain, Callahan, Fitzwater